UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL MORRIS,** | Civil Action No. 13-6142 (MAS) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **CITY OF TRENTON, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, United States Magistrate Judge:**

This matter comes before the Court by way of Motion [Docket Entry No. 8] filed by Defendants City of Trenton ("City") and former City Mayor Tony Mack ("Mack") (collectively, "Defendants") for an order granting summary judgment in this matter. Defendants contend that, as the underlying dispute was previously brought before a state administrative tribunal, the instant action is precluded. Plaintiff Michael Morris ("Plaintiff") opposes Defendants' Motion. The parties have consented to disposition of a dispositive motion by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(e). [Docket Entry No. 11]. For the reasons set forth below, Defendants' Motion is denied.

**I.     Factual Background**

Plaintiff was hired by the City prior to the Mack administration as a "Supervising Security Guard," a position he held until his initial layoff on November 5, 2010. (Def. Br., at 3; Docket Entry No. 8-2). During Plaintiff's tenure, Mack was elected Mayor of Trenton and assumed the office on July 1, 2010. (*Id.*) Once in office, Mack informed Acting Business Administrator William Guhl that a man named Robert Mendez ("Mendez") had been instrumental to the Mack campaign and that Mack wanted Mendez employed by the city. (Rau

Cert., Ex. 5, Guhl Cert., at ¶¶ 6-8; Docket Entry No. 8-4).  Specifically, Mack contemplated hiring Mendez in a supervisory position with the city's park rangers.  (*Id.*, at ¶ 9).  Trenton, as a civil service municipal corporation of the State of New Jersey, is subject to the regulations prescribed by the New Jersey Civil Service Act.  (*Id.*, at ¶ 10).  As such, Guhl explained that Mendez could not be employed in such a position since Plaintiff already held that title.  (*Id.*)  Additionally, since Mendez's Civil Service test results had not been released at that time, Guhl stated that Mendez could only be hired in a provisional capacity no matter which position he was hired into.  (*Id.*, at ¶ 14).

Nevertheless, Plaintiff was laid off as part of a November 2010 layoff process.  (Rau Cert., Ex. 5, Richardson Cert., at ¶¶ 1-2).  On March 24, 2011, Mendez was indeed hired as a "part-time provisional Senior Security Guard."  (Rau Cert., Ex. 4, at 41; Docket Entry No. 8-4).  Also in March of 2011, Mack was informed that due to the seniority system, the Civil Service Commission ("CSC") was requiring that Plaintiff be reinstated and that Mendez be laid off.  (Richardson Cert., at ¶¶ 1-2).  Although Mack was staunchly opposed and made derogatory comments regarding Plaintiff, the City Personnel Office informed Plaintiff that he would be reinstated.  (*Id.*, at ¶¶ 3-4).  Plaintiff subsequently released a press release regarding his reinstatement, which further upset Mack.  (*Id.*, at ¶¶ 5-6).  Additionally, Mack retained Mendez as a "Seasonal Security Guard" and instructed the Personnel Office to increase his salary and allow seasonal employees to work in excess of the twenty hour per week limit that had previously been imposed.  (*Id.*, at ¶¶ 7-9).

On June 28, 2011, Plaintiff was again laid off when the City submitted another layoff plan to the CSC, which was approved.  (Def. Br., at 4).  Plaintiff appealed this action to the CSC, which reinstated him on April 3, 2013.  (*Id.*)  In his appeal, Plaintiff argued the relevant seniority

rules and also alleged a bad faith motive behind the 2010 layoff, referencing Mack's derogatory comments. (Rau Cert., Ex. 4, at 41). Although the CSC reinstated Plaintiff, it found that his bad faith arguments were untimely since they did not address the 2011 layoff and, thus, the CSC did not consider them in its opinion. (*Id.*, at 42, 44).

Both parties moved for reconsideration, Defendants seeking a stay of the decision and Plaintiff seeking back pay and attorney's fees. (Rau Cert., Ex. 3, at 34). In connection with his appeal, Plaintiff submitted the certifications of City employees William Guhl and Maria Richardson, which the CSC considered in finding that the bad faith argument should have been considered since Mack's "animus [described in the certifications] clearly extended to the next layoff action and demonstrate[d] the Mayor's intent on removing him at any cost." (*Id.*, at 36). The CSC issued an opinion on September 4, 2013 denying Defendants' request for reconsideration and granting Plaintiff's request for reconsideration, granting back pay, seniority, and benefits.[1] (*Id.*, at 38). Plaintiff then filed the instant action alleging violations of 42 U.S.C. § 1983 and New Jersey's Law Against Discrimination (the "NJLAD"), N.J.S.A. 10-6-1, *et seq.*, which was subsequently removed to this Court.

## II.   The Parties' Arguments

### A. Defendants' Arguments

Defendants believe that Plaintiff should now be precluded from seeking additional remedies since the CSC's September 4, 2013 opinion and order "placed [Plaintiff] in the *status quo ante*" and there is nothing further to litigate. Advancing this argument, Defendants address *res judicata*, collateral estoppel, and New Jersey's entire controversy doctrine. (Def. Br., at 5). Defendants state that, in New Jersey, *res judicata* "is applicable where there is an identity of

---

[1] The CSC's opinion and order indicate that although the parties were allowed to submit evidence, the issue before them was decided on the papers and no hearing was held. The Court notes that the opinion indicates that Defendants did not respond to the claims advanced by Plaintiff.

3

parties, identity of issues, and identity of causes of action." (*Id.*, at 6 (citing *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 422 (App. Div. 2011)). Defendants argue that Plaintiff's factual allegations are identical to those contained in his CSC appeal, which were addressed in that appeal, and, thus, *res judicata* should serve to prevent relitigation of any part of the matter, including damages. (*Id.*, at 7).

Defendants additionally believe that collateral estoppel serves to bar this suit. In furtherance of this argument, Defendants note that the New Jersey Supreme Court has stated that collateral estoppel should apply when

> (i) the issue is identical to the issue decided in the earlier proceeding; (ii) the issue was actually litigated in an earlier proceeding; (iii) the court issued a final judgment on the merits; (iv) the determination was essential to the earlier judgment; and (v) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

(*Id.*, at 8 (citing *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 474 (D.N.J. 2009); *In re: Estate of Dawson*, 136 N.J. 1, 20-21 (1994))). Defendants state that collateral estoppel may also apply to decisions rendered by administrative agencies. (*Id.* (citing *City of Hackensack v. Winner*, 82 N.J. 1 (1980)). Further, courts may apply this principle even where every aforementioned element is not present when a litigant does not fully pursue an issue in the prior litigation (*See Winters v. North Hudson Regional Fire and Rescue*, 212 N.J. 67 (2012)) and, thus, since Plaintiff raised the bad faith issue during his CSC appeal, Defendants believe that Plaintiff should now be precluded from relitigating the issues of liability or damages. (*Id.*, at 9-10).

Finally, Defendants argue that New Jersey's "entire controversy doctrine" applies where a litigant fails to bring all known claims in the prior action and the subsequent action involves the same factual circumstances that gave rise to the underlying controversy. (*Id.*, at 11). Defendants state that the doctrine serves to preclude the filing of *additional* claims in subsequent

lawsuits following prior adjudication of an action between the same parties. (*Id.*, at 11-12 (citing *Schmidt v. Steele*, 2010 WL 4116891, at *3 (N.J. Super. Ct. App. Div. Oct. 21, 2010))).

### B. Plaintiff's Arguments

Plaintiff rebuts Defendants' assertion of *res judicata* by arguing that the court in *Bondi* explained that said doctrine requires that the demand for relief and the theory of recovery in the two actions must be identical, which is not the case here. (Pl. Br. at 3-4 (citing *Bondi*, *supra*, at 427); Docket Entry No. 9). Plaintiff points out that the relief sought in the instant lawsuit – damages for pain and suffering as well as punitive damages – is not within the CSC's power to award. (*Id.*, at 4-5). Plaintiff states that the same argument applies to his theory of recovery – that the CSC could not have heard claims under § 1983 or the NJLAD. (*Id.*, at 6).

In arguing that Defendant's invocation of collateral estoppel is misplaced, Plaintiff states that the matter was plainly not previously litigated, where the CSC held no hearing nor allowed the presentation of any witnesses. (*Id.*, at 9). Plaintiff does not believe that this type of adjudication is one to which preclusive arguments can be applied. (*Id.*) Plaintiff further argues that collateral estoppel does not prevent litigation subsequent to an administrative determination, merely that it may serve to limit how that litigation proceeds. (*Id.*, at 10). Similarly, Plaintiff argues that the entire controversy doctrine is inapplicable because "a layoff appeal does not constitute a final choice of forum for all claims which arise from an appointing authority's discriminatory layoff," and, as such, there was no previous litigation. (*Id.*, at 11).

### III.     Discussion

#### A.  Local Civil Rule 56.1

The District of New Jersey's Local Civil Rule 56.1(a), as amended in 2008, requires that the moving party furnish a statement apart from the brief setting forth in numbered paragraphs material facts deemed undisputed. The non-moving party must respond to this statement, addressing each paragraph and indicating agreement or disagreement with the characterizations. "A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." L. Civ. R. 56.1(a). However, in the absence of bad faith, a court may still decide a motion on its merits at the court's discretion. *See Shirden v. Cordero*, 509 F. Supp. 2d 461, 463-64 (D.N.J. 2007).

In the briefs before the Court, Plaintiff's opposition papers contain a blanket admission as to all material facts alleged in Defendants' brief while contending that these facts "differ entirely" from those contained in Defendants' statement of material facts. [Docket Entry No. 9, at 2]. Defendants' statement of material facts itself is a cursory recitation of the procedural history of this matter. Although the list of material facts in Defendants' brief do not completely comport with the Local Rules, they are in substantial compliance. Additionally, since Plaintiff does not dispute these facts nor the underlying certifications and administrative opinions cited therein, the Court believes it is in the interest of justice to evaluate Defendants' Motion on the merits.

#### B.  Summary Judgment Standard

A party seeking summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

*Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that absent sufficient evidence favoring nonmoving party for jury verdict in its favor, no issue for trial exists).  In determining whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pa Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

**C. Analysis**

The critical issue presented to the Court by way of Defendants' motion for summary judgment is whether the Commission's findings and the relief it granted prevent Plaintiff from now bringing an action under § 1983 and/or the NJLAD.[2]  The parties' moving papers present this idea under the common law theories of collateral estoppel, *res judicata*, and the "entire controversy" doctrine.  The Court addresses these issues in turn below.

**1. Collateral Estoppel**

The Court finds that, here, collateral estoppel does not bar Plaintiff's § 1983 and/or NJLAD claims.  As stated by the court in *Winters*, which has been cited by both parties:

> A litigant should not be permitted to participate in the administrative system designed to promote a fair and uniform statewide system of public employee discipline, raise a… defense, and then hold back on the defense in an attempt to save it for later duplicative litigation.  No efficient and respected system of justice can permit the spectacle, and resulting disrepute, of inconsistent litigated matters involving the same transactional set of facts,

---

[2] The Court notes that this issue does not really appear to involve facts, material or otherwise, but is instead, a legal question.  Nevertheless, the Court considers it in the context of the motion brought by Defendants.

> notwithstanding that the forums embrace judicial and quasi-
> judicial proceedings.  The public will neither understand nor
> appreciate the confounding wastefulness of such a result[.]

*Winters v. North Hudson Regional Fire and Rescue*, 212 N.J. 67, 72-73 (2012).  Instead, when issues are brought before administrative tribunals, "both the employer and employee must live with the outcome, including its potential preclusive effect on related employment-discrimination litigation."  *Id.*, at 73.

The *Winters* court, however, also noted that collateral estoppel, which is also known as issue preclusion, is "an equitable principle that arises 'when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  *Id.* at 85 (quoting *Restatement (Second) of Judgments* § 27 (1982)).  As a result, the *Winters* court held that:

> To forestall future litigation, "the party asserting the bar must show
> that:  (1) the issue to be precluded is identical to the issue decided
> in the prior proceeding; (2) the issue was actually litigated in the
> prior proceeding; (3) the court in the prior proceeding issued a
> final judgment on the merits; (4) the determination of the issue was
> essential to the prior judgment; and (5) the party against whom the
> doctrine is asserted was a party to or in privity with a party to the
> earlier proceeding."

*Id.* (quoting *Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 521 (2006) (citation omitted)).

Here, Defendants have failed to establish that they are entitled to collateral estoppel.  In this regard, they have not shown that the issues to be litigated here, *i.e.*, those related to Plaintiff's § 1983 and NJLAD claims, were actually litigated in the CSC appeal, where the CSC held no hearing nor heard any witnesses.  Further, even if Defendants were able to establish that collateral estoppel applied to certain issues, that alone would not be dispositive of Plaintiff's claims.  Instead, as the *Winters* court recognized, litigation concerning the same facts at issue in

an administrative proceeding may follow the administrative determination. *Id*. at 73 (noting that participants in administrative proceeding must live with outcome of same "including its potential preclusive effect on related employment-discrimination litigation"). Indeed, the *Winters* opinion clearly indicates that collateral estoppel applies to prevent a party in the subsequent litigation from engaging in factfinding in the hopes of proving previous factfinding incorrect. It does not prevent the subsequent litigation itself. If anything, collaretal estoppel here would simply prevent the parties, including Defendants from challenging the factfinding made by the Commission during Plaintiff's CSC appeal, factfinding that appears to very much favor Plaintiff. Nevertheless, as stated above, the Court finds that collateral estoppel does not apply here.

### 2. Res Judicata

The Supreme Court has definitively stated that the notion of full faith and credit (codified at 28 U.S.C. § 1738) "requires that state-court judgments be given both issue and claim preclusive effect in subsequent actions under 42 U.S.C. § 1983." *University of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986 (citing *Allen v. McCurry*, 449 U.S. 90 (1980) (addressing issue preclusion); *Migra v. Warren City School District*, 465 U.S. 75 (1984)(addressing claim preclusion)). As just noted, this provision "governs the preclusive effect to be given the judgment and records of state courts[.]" *Id.* at 794. It is, however, "not applicable to the unreviewed state administrative factfinding" here. *Id.* Nevertheless, "because § 1738 antedates the development of administrative agencies it clearly does not represent a congressional determination that the decisions of state administrative agencies should not be given preclusive effect." *Id.* at 795. Instead, "federal common-law rules of preclusion" may bar claims "in the absence of a governing statute." *Id.* at 794.

9

The Court in *Elliott* held that as a matter of federal common law, "when a state agency 'acting in a judicial capacity… resolves disputed issues of fact properly before it in which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799 (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)). Thus, as Defendants cite, in regard to *issue* preclusion, a federal court must "look to the law of the state where the [administrative] judgment was rendered" to determine what preclusive effect may result. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).[3] The Supreme Court, however, has yet to reach the same, or indeed any, conclusion with respect to claim preclusion. Neither has the Third Circuit. As a result, the Court first turns to whether state preclusion rules should apply in determining the claim preclusion effects of an administrative proceeding or if federal common law governs the issue.[4]

Not surprisingly, among the Circuit Courts that have considered this issue, there is a split. The Eleventh and Fourth Circuits have both found against applying state preclusion principles in determining the *res judicata* effect of an unreviewed agency decision. *See Dionne v. Mayor and City Council of Baltimore*, 40 F.3d 677, 681 (4th Cir. 1994) (holding that "federal common law determines what, if any, claim preclusive effect is to be accorded unreviewed state administrative decisions in subsequent §1983 actions."); *Gjellum v. City of Birmingham*, 829 F.2d 1056, 1065 (11th Cir. 1987) (holding that at least in context of §1983 suits, "the federal common law of preclusion does not require application of state claim preclusion rules to unreviewed state administrative decisions.") The Fifth and Seventh Circuits have split the difference, suggesting

---

[3] The Court has already done so here, relying on New Jersey state law to dispose of the parties' arguments concerning collateral estoppel.
[4] The Court notes that despite the fact that Defendants bear the burden of establishing claim preclusion, they seem to have failed to address this issue.

10

that state claim preclusion rules might at times apply where the original forum did not have the ability to adjudicate all claims or award all damages sought. *See Frazier v. King*, 873 F.2d 820, 825 (5th Cir. 1989); *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 866 (7th Cir. 1996) (overturned on other grounds, *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009)) (holding that while state laws of claim preclusion may facilitate application of federal claim preclusion rules, deference to state is not unlimited and "federal courts will not decline to hear claims pertaining to federal rights solely on the basis of state *res judicata* principles."). The Eighth and Ninth Circuits have applied state claim preclusion rules to unreviewed administrative decisions. *See Plough v. West Des Moines Community School District*, 70 F.3d 512, 517 (8th Cir. 1995) (holding that "federal district court was bound to give the State Board's decision the same [claim] preclusive effect as state courts would."); *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994) (giving same claim preclusive effect to unreviewed agency decisions as they would be given in state court in which they were rendered as long as certain fairness requirements are met).

  Without rendering a determination that state preclusion rules should be totally disregarded as a matter of course, after considering the split, the Court is persuaded by and will apply the reasoning of the Eleventh and Fourth Circuits and apply federal common law principles of claim preclusion in determining if Plaintiff's §1983 and NJLAD claims are barred by *res judicata*. In so doing, the Court is keenly aware that, as previously noted, New Jersey state courts appear to tacitly acknowledge that lawsuits subsequent to administrative determinations may occur. *See Winters*, 212 N.J. at 73 (recognizing that litigation concerning the same facts at issue in administrative proceeding may follow administrative determination).

Applying federal common law principles of claim preclusion, the Court finds that Plaintiff's § 1983 and NJLAD claims are not barred by *res judicata*.  In this respect, the Court adopts the reasoning in *Dionne* at least with respect to Plaintiff's § 1983 claim.  As stated in *Dionne*, while "[m]any of the traditional principles of claim preclusion are the same as those of issue preclusion[,] [b]oth doctrines 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decision, encourage reliance on adjudication[,]' . . . claim preclusion is the much more drastic doctrine, for it achieves these goals by forcing a plaintiff to raise all possible theories of recovery and to demand all desired remedies in one proceeding at peril of losing all not raised in it."  40 F.3d at 683 (citation omitted).  Given this drastic consequence, courts will not bar claims unless the claimant has had "a fair opportunity to advance all its 'same transaction' claims in a single unitary proceeding."  *Id*. (citing *Restatement (Second) of Judgments § 26* cmt. c).

The agency proceedings at issue here were clearly of limited scope.  As Plaintiff notes, "[t]he Commission's jurisdiction is limited to questions concerning an appointing authority's compliance with the Civil Service Act, N.J.S.A. 11A:1-1, et seq. (implemented through N.J.A.C. 4A:1-1, et seq.)." (Pl. Br., at 6).  There is no real dispute that Plaintiff was unable to pursue his §1983 and NJLAD claims or the attendant relief for pain and suffering and punitive damages in the administrative proceedings.  Further, had Plaintiff initially attempted to pursue his § 1983 and NJLAD claims in state or federal court along with a claim for discharge in violation of the Civil Service Act (the subject of the agency proceedings), Defendants certainly would have moved to dismiss the suit based on Plaintiff's failure to exhaust administrative remedies. *Romary v. City of Paterson*, 2013 WL 5566936, at *1 (N.J. App. Div. Oct. 10, 2013) (citing *Boss v. Rockland Elec. Co.*, 95 N.J. 33, 40 (1983)).  Moreover, had Plaintiff pursued solely the § 1983

and NJLAD claims, there is no guarantee that he would have recovered the relief sought via the administrative proceeding, and, if he had not, there is more than a fair chance that pursuing an administrative claim would not have then been possible in light of the short 20 day period for asserting an appeal with respect to such claims.  *See* N.J.A.C. 4A:2-1.1(b).

Under these circumstances, it is hard to see how Plaintiff could have feasibly pursued his claims and demanded all of his desired remedies in a single, unitary proceeding.  As a result, the Court finds that "ordinary claim preclusion principles would not prevent the later assertion of a same transaction § 1983 claim (or any other beyond the competence of the administrative agency [such as Plaintiff's NJLAD claim]) following the agency determination."  *Dionne*, 40 F.3d at 683.  Consequently, the Court finds that Plaintiff's §1983 and NJLAD claims are not barred by *res judicata*.[5]

### 3. The Entire Controversy Doctrine

New Jersey's entire controversy doctrine, in essence, requires a party to bring in a single lawsuit "'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts."  *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 289 (1995) (abrogated on other grounds, *Olds v. Donnelly*, 150 N.J. 424 (1997)).  "Although sometimes approached as if they belong in two different families, New Jersey's entire controversy doctrine and traditional *res judicata* principles are blood relatives."  *Id.*, at 886 (internal citations

---

[5] While the Court has determined that federal common law rules of claim preclusion should apply in this case, the Court notes that New Jersey apparently would apply the same general rule of claim preclusion applied by the Court here in similar situations.  *See Bondi v. Citigroup, Inc.*, 423 N.J.Super. 377, 422-23, 427-28 (App. Div. 2011).

omitted). The New Jersey Supreme Court has also explained that application of the entire controversy doctrine is "best left to a case-by-case determination" and should not be applied when it would result in "significant unfairness" to the parties. *Circle Chevrolet*, 142 N.J. at 290. Equitable principles dictate that the doctrine should only be applied when "the party whose claim is being sought to be barred… had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Cafferata v. Peyser*, 251 N.J. Super. 256, 261 (App. Div. 1991).

The Court is of the opinion that the entire controversy doctrine is inapplicable in the instant matter. The Third Circuit has definitively stated that a "federal court hearing a federal cause of action is bound by New Jersey's entire controversy doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act." *Rycoline*, 109 F.3d, at 887; *Peduto v. City of North Wildwood*, 878 F.2d 725, 728 (3d Cir. 1989). However, as explained above, the Full Faith and Credit Clause does not apply to unreviewed administrative decisions. In conjunction with the New Jersey Supreme Court's pronouncement that the doctrine is at least roughly analogous to *res judicata*, logically then, the doctrine's application in a case like this would have to be mandated by the same general federal common law rules that govern claim preclusion. Though as noted above, under the circumstances of this case, the federal common law rules of claim preclusion and New Jersey's claim preclusion rules would produce the same outcome: Plaintiff's § 1983 and NJLAD claims would not be barred here.

As just noted, *res judicata* does not bar Plaintiff's § 1983 and NJLAD claims. For similar reasons, the Court finds the entire controversy doctrine to be inapplicable here. Simply put, as already described, Plaintiff could not have effectively pursued all of his affirmative claims in a single litigation. Under these circumstances, it would be entirely unfair to apply the entire controversy doctrine to bar Plaintiff's § 1983 and NJLAD claims now.

In reaching this conclusion, the Court is aware that a court from this District has previously entered summary judgment against a plaintiff where it determined that the entire controversy doctrine did indeed apply to suits involving prior administrative proceedings. *See Kelly v. Borough of Sayreville*, 927 F. Supp. 797 (D.N.J. 1996). The *Kelly* decision, however, was based, in part, on the idea that there is no exhaustion requirement under § 1983 and, thus, a party is not forced to initially bring suit in an administrative forum. *See, e.g., Id.* at 805. The Third Circuit reversed the *Kelly* decision on other grounds. In so doing, the Third Circuit stated "we need not consider the entire controversy ruling, though we note that we have significant reservations concerning the district court's disposition of that issue." *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1075 (3d Cir. 1997).

While the Third Circuit has not definitively addressed the issue, Judge McKee, concurring in the *Kelly* opinion, believed that the Court should have taken the occasion to speak to the issue, noting that it "missed an opportunity to start putting this jurisprudential genie back into its analytical bottle." *Id.*, at 1080. In his concurrence, Judge McKee noted that the Third Circuit had previously stated that

> under the entire controversy doctrine, a party will not be barred from raising claims that he could not have brought in the initial action." *Jones v. Holvey*, 29 F.3d 828, 831 (3d Cir. 1994) (internal quotations and citations omitted). As the New Jersey Supreme Court has stated, if the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should not be held precluded. *Jones v. Holvey*, 29 F.3d 828, 831 (3d Cir. 1994) (internal quotations and citations omitted).

Here, as noted above, the operative facts weigh heavily against applying the doctrine to Plaintiff's claims. Consequently, the Court shall not do so.

**IV.     Conclusion**

For the reasons stated above, the Court finds that neither collateral estoppel, *res judicata*, nor New Jersey's entire controversy doctrine act as a bar to Plaintiff's § 1983 and NJLAD claims.  As a result, there is no basis on which to grant judgment in favor of Defendants.  Consequently, Defendants' Motion for Summary Judgment is denied.  An appropriate Order follows.

Dated:  September 26, 2014

                                            s/Tonianne J. Bongiovanni                      
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**